CLAY, Circuit Judge,
dissenting.
Workplace discrimination cases like this one, in which the merits of the plaintiffs case largely depend on the credibility of the plaintiff and the alleged harasser, are best left for a jury. I would therefore reverse the district court’s decision to grant Defendant summary judgment.
Title VII makes it “an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual’s ... sex[.]” 42 U.S.C. § 2000e-2(a)(l). “[Tjhis language is not limited to ‘economic’ or ‘tangible’ discrimination. The phrase ‘terms, conditions, or privileges of employment’ evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.” Hams v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotations and citations omitted). To establish a prima facie case of hostile work environment, a plaintiff must show that: (1) she is a member *419 of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. Randolph v. Ohio Dept, of Youth Servs., 453 F.3d 724, 733 (6th Cir.2006).
A hostile work environment occurs “[wjhen the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.” Harris, 510 U.S. at 21, 114 S.Ct. 367 (quotations and citations omitted). Relevant factors include “the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Id. at 23, 114 S.Ct. 367. “[T]he conduct underlying a sexual harassment claim need not be overtly sexual in nature. Any unequal treatment of an employee that ivould not occur but for the employee’s gender may, if sufficiently severe or pervasive under the Harris standard, constitute a hostile environment in violation of Title VII.” Williams v. Gen. Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999) (emphasis supplied). Moreover, “courts must be mindful of the need to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility.” Id. at 563. As the Supreme Court stated, “[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.” Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).
The majority opinion correctly cites the Supreme Court’s “severe or pervasive” standard, noting that the district court erred to the extent that it required Hens-man to prove both severity and pervasiveness. However, the majority then misapplies the standard when it states that because Hensman’s assertions do not portray Batchelder’s discrimination as either severe or pervasive, the district court’s error was harmless. Majority Op. at 416 n. 1. Viewing the facts in the light most favorable to Hensman, it seems clear that Batchelder’s gender-based comments and actions toward her were pervasive enough to create an issue of fact with respect to whether a hostile work environment existed.
In Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir.2005), this Court, in finding that one of the plaintiffs was subject to a hostile work environment and the other was not, elaborated on where to drawn the line between isolated episodes and conduct that is actionable because it is pervasive. In that case, a supervisor made two sexually vulgar remarks toward one employee, placed his vibrating pager on her thigh once as she passed her in the hall, and pulled on the back of her overalls when she told him she was wearing a thong; these four episodes, over a two- and-a-half year period, did not rise to an actionable level. Id. at 351. However, because the other plaintiff alleged seventeen episodes involving the same supervisor, including that he placed his vibrating pager between her legs and continually grabbed her hand, this Court found such behavior to be more of an “ongoing pattern of unwanted conduct and attention” that created a hostile working environment. Id. at 352.
Among other allegations, Hensman asserts that Batchelder (1) hugged her on three different occasions; (2) told her she *420 looked “cute in her jammies” and then repeated that comment in front of other fire department personnel the next day, (Joint Appendix (“J.A.”) at 357); (3) told her she was “voluptuous” and made a hand gesture to demonstrate, (J.A. at 353); (4) told her that she reminded him of his wife and that he was lonely because his wife did not currently live with him; (5) closed the door to his office while meeting with her more than once per day; (6) sniffed her and told her she smelled nice; (7) called her “beautiful” and told her “how attractive” she was, (J.A. at 343, 355-56); and (8) grabbed her arm as she was trying to get into her car after arguing with him. As the majority notes, all of these actions and comments could be considered “sexual” in nature, because none of them likely would have happened but for Hensman’s gender. See Williams, 187 F.3d at 565.
Arguably, none of Batchelder’s actions qualify as severe, but the sheer frequency of the incidents, which all took place over a span of less than two months, indicate enough of an “ongoing pattern of unwanted conduct and attention” to survive summary judgment. See Clark, 400 F.3d at 351-52 (seventeen episodes over two-plus years pervasive enough); Abeita v. Trans-America Mailings, Inc., 159 F.3d 246, 251-52 (6th Cir.1998) (sexually harassing comments, while not severe, were “commonplace,” “ongoing,” and “continuing,” creating issue of fact with respect to hostile work environment claim). The majority identifies “the most disturbing instances” of Batchelder’s conduct and finds that those instances were infrequent. Majority Op. at -. However, the test is not whether the most egregious acts were frequent, but whether Batchelder’s conduct, taken as a whole, was pervasive enough to constitute a pattern of gender-based behavior. See Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir.1999) (cautioning that disaggregating claims of plaintiff alleging hostile work environment “robs the incidents of their cumulative effect”).
In addition to the frequency of Batchel-der’s conduct, several other Harris factors are present in Hensman’s assertions. First, Hensman asserted that Batchelder would tell her “nearly daily” that he “absolutely could not do any of this without [her],” and that he would call her into his office to talk to her privately more than once per day. (J.A. at 355.) Hensman asserts that those closed-door meetings were often the time in which Batchelder would tell her how attractive she was. A jury could find that such constant attention interfered with Hensman’s ability to perform her job; Hensman even told Batchel-der that she had trouble doing her job in part because of all of the “compliments and personal statements” he was making toward her. (J.A. at 359.) Second, Hens-man asserts that when Batchelder told her, in front of her colleagues, that she had looked “cute in her jammies” the previous night, she was humiliated; whether it was reasonable to feel humiliated by such a comment may be a question for the jury, but in the context of all of the other episodes, a reasonable juror could find the comment to be another factor causing an abusive environment. Third, although Batchelder’s only action that could possibly be described as physically threatening — grabbing Hensman’s hand outside of the fire station — may have been more of an attempt to stop her from leaving and calm her down than an effort to intimidate her, it is again difficult to make that determination when making all inferences in Hensman’s favor.
Batchelder states that Hensman never asked him to leave his office door open when she was meeting with him, and that he had a policy of closing the door when any colleague was in his office. Batchel-der also denies several of the comments *421 Hensman attributes to him. However, this Court must favor Hensman’s version of the events for the purpose of this motion. Certainly, the incidents Hensman asserts cannot be characterized as “isolated,” and while most, if not all, of Batchel-der’s comments could be seen as the kind of “simple teasing [and] offhand comments” that are not actionable under Title VII, see Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), that determination should be left for the jury. For these reasons, I would reverse the district court’s summary judgment order and remand the case for trial.[1]

. I would also reverse with respect to Hens-man’s state law claim, as a hostile work environment claim under the Elliott-Larsen Civil Rights Act requires demonstrating substantially the same five elements as under Title VII. See Radtke v. Everett, 442 Mich. 368, 501 N.W.2d 155, 162 (1993) (setting forth the five-element test for state hostile work environment claim).