[Cite as *Ballard v. Community Support Network*, 2010-Ohio-200.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CINDY BALLARD

    Plaintiff

    v.

COMMUNITY SUPPORT NETWORK

    Defendant
    Case No. 2007-07914

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff brought this action alleging sexual harassment and retaliation. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Defendant, which ceased operation in 2008, was a division of Summit Behavioral Healthcare (SBH) that specialized in providing mental health care to patients at their homes rather than at the SBH hospital. Plaintiff, a registered nurse, began working for defendant in March 2002 in the position of "team leader." At that time, plaintiff had approximately 13 years of continuous experience working at various mental health facilities operated by the state of Ohio.

{¶ 3} The team leader position was a managerial role in which plaintiff supervised several of defendant's employees, and she in turn reported directly to defendant's director, Matthew Rucker. Plaintiff testified that soon after she began the job, Rucker informed her that he expected to be promoted soon to a more senior position within SBH and that he desired to train plaintiff to assume the role of director

upon his departure. According to plaintiff, though, it soon became apparent that Rucker had more than a professional interest in her. Plaintiff testified that Rucker flirted with her, made sexual innuendos, stood uncomfortably close to her, solicited hugs, and deliberately "bumped into" her on one occasion.

{¶ 4} Plaintiff testified that Rucker's advances made her uneasy and that she tried to express her disinterest by simply refusing to acknowledge such behavior. Plaintiff stated that, after a few months, this strategy proved effective as Rucker "backed off" and that, notwithstanding such conduct, he treated her fairly and they got along well for at least the first year of her tenure. Indeed, plaintiff's performance review from April 2003 shows that Rucker gave her positive feedback and that plaintiff wrote "I love my job!" atop her signature. (Defendant's Exhibit A.)

{¶ 5} In approximately May 2003, Rucker learned that he would not receive the promotion that he had anticipated and, according to plaintiff, this brought about a change in his demeanor. Plaintiff stated that while Rucker had always been a demanding boss, he became more abusive and intimidating around this time, especially toward her. Plaintiff testified that Rucker gave her menacing looks and used intimidating body language such that she feared he might become violent.

{¶ 6} Other employees of defendant recalled that they too were troubled by Rucker's behavior. Frank Thompson, a nurse, testified that the workplace was plagued by low morale due to Rucker's bullying and disrespectful behavior and that the situation worsened after Rucker failed to receive his expected promotion. Dr. William Cohalen, a psychologist, testified that he found Rucker to be "somewhat authoritarian" and insulting toward staff.

{¶ 7} Plaintiff stated that, in mid-2003, she complained about Rucker's demeanor to the SBH human resources department and to Malcolm King who was the Director of Nursing at SBH and Rucker's immediate supervisor. According to King, Rucker also approached him around this time to report that he was having difficulty with plaintiff in that she was being insubordinate, undermining his authority, and not communicating with him. King stated that in an effort to resolve the conflicts between plaintiff and Rucker, he arranged a series of meetings between the three of them which were held on July 31, August 28, September 4, and September 12, 2003.

**{¶ 8}** Plaintiff testified that she found these meetings to be unproductive because discussion tended to center more on Rucker's concerns than hers and she stated that Rucker intimidated her during the meetings to the point that she was afraid to broach certain topics. According to King, any topics were up for discussion during the meetings and both plaintiff and Rucker made their respective concerns known. However, King stated that he found plaintiff's criticism of Rucker to be hostile and manipulative and that she unfairly portrayed Rucker as being "mean." King testified that based upon his observations in the meetings and in his visits to defendant's offices, he found that plaintiff exhibited passive-aggressive behavior, that she lacked respect for Rucker's authority, and that she did not communicate civilly with Rucker. King further stated that plaintiff was too friendly with subordinate employees and that, when contrasted with Rucker's more disciplined management style, this had the potential to divide defendant's staff. After the series of meetings concluded, King admonished plaintiff to modify such behavior in a letter dated November 12, 2003. (Defendant's Exhibit G.)

**{¶ 9}** Nevertheless, both during and after the series of meetings with King, problems persisted between plaintiff and Rucker. On the afternoon of Friday, August 19, 2003, Rucker came to plaintiff's office and asked her to review and sign a written reprimand that he was issuing her. Plaintiff stated that she told Rucker that her "eyes hurt" and that she would rather address the reprimand the following Monday, but that Rucker insisted on addressing it at that time. Plaintiff testified that she then asked Rucker to leave her office and that, when he refused to do so, she began to telephone the SBH police department because she found his continued presence to be intimidating. Rucker left plaintiff's office at that time and plaintiff hung up the telephone, but she later submitted an incident report to the police.

**{¶ 10}** Joe Heckel, Chief of the SBH police department, testified that he investigated plaintiff's report. Heckel stated that he interviewed plaintiff and Rucker, that they described the incident similarly, and that plaintiff told him that Rucker never verbally or physically threatened her. Following Heckel's investigation, the matter was referred to SBH Chief Executive Officer Liz Banks, who declined to take any action.

**{¶ 11}** Another dispute between plaintiff and Rucker arose on October 27, 2003, when Rucker filed a "request for disciplinary action" with the SBH human resources department wherein he charged plaintiff with insubordination for countermanding instructions that he had given to another employee that day. (Defendant's Exhibit E.) On November 4, 2003, plaintiff appeared at a hearing on this charge before Labor Relations Officer John Quigley. Quigley found just cause for the insubordination charge and, on November 24, 2003, Banks adopted Quigley's finding and issued plaintiff a formal reprimand. (Defendant's Exhibit F.)

**{¶ 12}** King testified that, in light of the persistent problems between plaintiff and Rucker, he decided to reassign plaintiff to a vacant second-shift (2:30 p.m. - 11:00 p.m.) "relief supervisor" position in the nursing department of SBH. On December 2, 2003, King sent plaintiff a memorandum informing her of the reassignment and requesting that she report for her new position on December 8, 2003. (Plaintiff's Exhibit 7.)

**{¶ 13}** Although the sequence of events is not clear, plaintiff testified that at some point on the same day that King sent his memorandum, she e-mailed the SBH police department to report that Rucker had followed her during a portion of her commute home several days earlier on November 28, 2003. According to Banks, the police investigated these allegations but found them to be without merit.

**{¶ 14}** On December 3, 2003, most of defendant's employees signed a memorandum asking King to reconsider his decision to reassign plaintiff. (Plaintiff's Exhibit 1.) Plaintiff sent King an e-mail on December 4, 2003, in which she objected to the reassignment on the basis that her family and church obligations prevented her from working second shift; plaintiff additionally testified that she opposed the reassignment because she considered it to be a demotion. (Plaintiff's Exhibit 8.) King testified, though, that the reassignment was in the best interest of defendant and SBH and, moreover, that it represented a lateral move for plaintiff with no reduction in pay and with equal or greater supervisory responsibilities.

**{¶ 15}** Plaintiff stated that in order to "sort out" the situation, she submitted a request on December 4, 2003, to utilize leave time through March 8, 2004. (Plaintiff's Exhibit 9.) Plaintiff's request was denied, however, and she failed to report for her new position as scheduled on December 8, 2003. On December 11, 2003, plaintiff

submitted another request for leave, but this too was denied.  (Plaintiff's Exhibit 9.)
Plaintiff testified that due to her inability to work second shift and her requests for leave
being denied, she never reported for the new job and instead tendered her resignation
via a letter from her attorney dated December 19, 2003.  (Plaintiff's Exhibit 12.)

**SEXUAL HARASSMENT**

Plaintiff alleges that Rucker's behavior created a hostile work environment in
violation of the prohibition against sexual discrimination in R.C. 4112.02(A).  In order to
establish such a claim, "plaintiff must show (1) that the harassment was unwelcome, (2)
that the harassment was based on sex, (3) that the harassing conduct was sufficiently
severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any
matter directly or indirectly related to employment,' and (4) that either (a) the
harassment was committed by a supervisor, or (b) the employer, through its agents or
supervisory personnel, knew or should have known of the harassment and failed to take
immediate and appropriate corrective action."  *Hampel v. Food Ingredients Specialties,
Inc.*, 89 Ohio St.3d 169, 176-177, 2000-Ohio-128.

With regard to the first element, "[t]he conduct must be 'unwelcome' in that the
plaintiff neither solicited it nor invited it and regarded the conduct as undesirable or
offensive."  *Bell v. Berryman*, Franklin App. No. 03AP-500, 2004-Ohio-4708, ¶57.
Based upon plaintiff's testimony that Rucker's advances were uninvited and made her
uneasy, the court finds that plaintiff satisfied this first element of her claim.

The second element concerns whether members of one sex are exposed to
disadvantageous terms or conditions of employment to which members of the other sex
are not exposed.  *Oncale v. Sundowner Offshore Servs., Inc.* (1998), 523 U.S. 75.  The
harassment need not be explicitly sexual in nature, as actions that are simply abusive,
with no sexual element, can support a claim for sexual harassment if they are directed
at an employee because of his or her sex.  *Hampel*, supra, at 178-179.

Plaintiff testified that during the first few months of her employment, Rucker
made sexual innuendos and other suggestive comments to her, solicited hugs, stood
uncomfortably close to her, and engaged in similarly "amorous" conduct to which other

employees were not exposed. The court finds that this pattern of conduct, which according to plaintiff ceased by mid-2002, constituted harassment based upon sex.

Although plaintiff testified that Rucker intimidated and insulted her after that time, particularly in 2003, she admitted that Rucker was rude and demanding toward all staff. Dr. Cohalen testified that, like plaintiff, he too was the subject of formal disciplinary charges brought by Rucker. Furthermore, plaintiff described only one instance of harassment with a sexual element occurring after mid-2002, when Rucker privately called her a derogatory name for women following a meeting in which she had disagreed with him. Plaintiff acknowledged, though, that Rucker regularly used such profanity with all of defendant's employees. Given the isolated, albeit reprehensible, nature of that alleged remark and considering Rucker's coarse demeanor toward all of defendant's employees by that time, the court finds that any harassment that allegedly occurred after mid-2002 was not unique to plaintiff and was not based upon her sex.

The third element of plaintiff's claim concerns whether the harassment was sufficiently severe and pervasive as to alter the terms and conditions of her employment. In assessing this element, the court "must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." *Hampel*, supra, at 181. "While no single factor is required, circumstances to consider may include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely an offensive utterance, whether the conduct unreasonably interferes with an employee's work performance, and whether psychological harm results." *Hoyt v. Nationwide Mut. Ins. Co.*, Franklin App. No. 04AP-941, 2005-Ohio-6367, ¶76. "Conduct that is merely offensive, without more, is not actionable as hostile work environment harassment * * *." *Bell*, supra, at ¶60, citing *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21.

Plaintiff described several ways in which Rucker harassed her early in her tenure with defendant, but she testified that such behavior did not impede her from performing her job well during that time. Indeed, plaintiff described significant improvements that she made to defendant's operations in the earliest months of her employment, such as improved record keeping and better organization of staff caseloads.

Plaintiff testified that, although she came to feel physically threatened by Rucker in 2003, she did not perceive him to be threatening during the period of harassment at issue in 2002. To the contrary, plaintiff stated that Rucker was "excessively polite" and "super kind" to her during that time. Plaintiff further stated that while Rucker's advances made her uneasy, she was able to simply ignore them and carry on with her work and that this strategy proved effective inasmuch as Rucker ended such behavior within a few months. Furthermore, there is no evidence that plaintiff suffered psychological harm as a result of the harassment.

In light of the foregoing, the court concludes that plaintiff has failed to demonstrate that Rucker's harassment of her was sufficiently severe and pervasive as to alter the terms and conditions of her employment. Accordingly, plaintiff has failed to prove her claim for hostile work environment sexual harassment.

**RETALIATION**

Plaintiff alleges that defendant reassigned her to the second shift position in retaliation for her complaining of sexual harassment and that, as a result, her resignation amounted to a constructive discharge. Plaintiff premises her claim upon R.C. 124.341, often referred to as "the state employee whistleblower statute." However, section (D) of the statute expressly provides that jurisdiction over any claim arising thereunder is limited to the state personnel board of review. Therefore, plaintiff's claim for retaliation under R.C. 124.341 is not cognizable in this forum. See *Dargart v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2002-09668, 2005-Ohio-4463.

At trial, plaintiff argued alternatively that her reassignment constituted retaliation under R.C. 4112.02(I), which provides that it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

In order to establish a prima facie case of retaliation under R.C. 4112.02(I), a plaintiff is required to prove that: "'(1) plaintiff engaged in a protected activity; (2) the employer knew of plaintiff's participation in the protected activity; (3) the employer

engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action.'" *Motley v. Ohio Civ. Rights Comm.*, Franklin App. No. 07AP-923, 2008-Ohio-2306, ¶11, quoting *Zacchaeus v. Mt. Carmel Health Sys.*, Franklin App. No. 01AP-683, 2002-Ohio-444. (Additional citations omitted.)

Plaintiff asserts that she engaged in protected activity under R.C. 4112.02(I) by reporting Rucker's harassment to defendant on at least two occasions: 1) at her disciplinary hearing on November 4, 2003, when she allegedly gave the hearing officer, John Quigley, a written statement relating that Rucker had harassed her in 2002, and 2) on December 2, 2003, when she sent an e-mail to the SBH police department stating that she believed Rucker followed her during a portion of her commute home from work several days earlier.

The written statement that plaintiff claims to have given Quigley recounts the alleged June 2002 incident in which Rucker deliberately bumped into her, as well as incidents on July 14, 2003, and August 19, 2003, when Rucker allegedly acted "mean" and "hostile" toward her without any sexual element. (Plaintiff's Exhibit 11.) However, Quigley testified that he did not recall plaintiff's giving him any such statement during the hearing and that if she had done so, he would have forwarded it to SBH administrators.

With regard to plaintiff's e-mail to the police, it is unclear whether plaintiff sent this message before or after King sent her the memorandum that same day to inform her of the reassignment. But, even if the court were to assume that plaintiff's e-mail slightly preceded King's memorandum and that she did in fact give Quigley the written statement, King credibly testified that he was not aware of these actions nor any similar complaints by plaintiff, prior to reassigning her. Moreover, plaintiff admitted that she never notified King of any sexual harassment by Rucker. Based upon the foregoing, the court concludes that King lacked notice of any report of sexual harassment that plaintiff may have made to Quigley or the police.

Furthermore, the evidence does not demonstrate a causal connection between King's reassignment of plaintiff and her alleged reporting of Rucker's harassment. King explained his rationale for reassigning plaintiff, when he testified that after Banks' reprimand of plaintiff on November 24, 2003, he concluded that plaintiff was unable to

cooperate with Rucker, that defendant's staff had split into factions due to plaintiff's and Rucker's contrasting management styles, and that the needs of defendant and SBH would best be served by reassigning plaintiff to the vacant second shift position. King's decision followed several months of effort by himself, plaintiff, and Rucker to solve the problems surrounding defendant's management, during which time King repeatedly counseled plaintiff to modify her behavior. Although plaintiff testified that King's criticism of her was unfair, she admitted that her managerial style did conflict with Rucker's and that his lack of formal nursing or medical training caused her to question his leadership.

The causation element of plaintiff's retaliation claim requires her to demonstrate that the reassignment would not have occurred had she not engaged in the protected activity. *Hall v. Banc One Mgmt. Corp.*, Franklin App. No. 04AP-905, 2006-Ohio-913, ¶42. However, due to the persistent and untenable conflict between plaintiff and Rucker, as evidenced by the reprimand for insubordination that Banks issued plaintiff just nine days before her reassignment, the court is persuaded that King would have reassigned plaintiff regardless of whether she engaged in protected activity. Given the absence of a causal connection between any protected activity and the reassignment, as well as King's lack of knowledge of any protected activity by plaintiff, the court finds that plaintiff has failed to prove her claim of retaliation under R.C. 4112.02(I). In light of this finding, any discussion of plaintiff's claim regarding constructive discharge is rendered moot.

For the foregoing reasons, the court finds that plaintiff has failed to prove her claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CINDY BALLARD

Plaintiff

v.

COMMUNITY SUPPORT NETWORK

Defendant
Case No. 2007-07914

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Eric A. Walker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard B. Reiling
5045 North Main Street, Suite 320 D
Dayton, Ohio 45415

RCV/cmd
Filed January 11, 2010
To S.C. reporter January 25, 2010