# ONCALE *v.* SUNDOWNER OFFSHORE SERVICES, INC., ET AL.

No. 96–568.   Argued December 3, 1997—Decided March 4, 1998

SCALIA, J., delivered the opinion for a unanimous Court.   THOMAS, J., filed a concurring opinion, *post*, p. 82.

*Nicholas Canaday III* argued the cause for petitioner. With him on the briefs were *Andre P. LaPlace* and *Eric Schnapper.*

*Deputy Solicitor General Kneedler* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Acting Solicitor General Dellinger, Acting Assistant Attorney General Pinzler, Deputy Solicitor General Waxman, Beth S. Brinkmann, C. Gregory Stewart, J. Ray Terry, Jr., Gwendolyn Young Reams,* and *Carolyn L. Wheeler.*

*Harry M. Reasoner* argued the cause for respondents. With him on the brief were *John H. Smither, Marie R. Yeates, Thomas H. Wilson,* and *Samuel Issacharoff.** 

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether workplace harassment can violate Title VII's prohibition against "discrimination] . . . because of . . . sex," 42 U. S. C. § 2000e–2(a)(1), when the harasser and the harassed employee are of the same sex.

I

The District Court having granted summary judgment for respondents, we must assume the facts to be as alleged by petitioner Joseph Oncale. The precise details are irrelevant

---

*Briefs of *amici curiae* urging reversal were filed for the Association of Trial Lawyers of America by *Ellen Simon Sacks* and *Christopher P. Thorman;* for the Lambda Legal Defense and Education Fund et al. by *Beatrice Dohrn, John Davidson, Ruth Harlow, Steven R. Shapiro, Sara L. Mandelbaum,* and *Minna J. Kotkin;* for the National Employment Lawyers Association by *Margaret A. Harris* and *Anne Golden;* for the National Organization on Male Sexual Victimization, Inc., by *Catharine A. MacKinnon;* and for Law Professors by *Nan D. Hunter.*

Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Advisory Council by *Robert E. Williams* and *Ann Elizabeth Reesman;* and for the Texas Association of Business & Chambers of Commerce by *Jeffrey C. Londa* and *Linda Ottinger Headley.*

to the legal point we must decide, and in the interest of both brevity and dignity we shall describe them only generally. In late October 1991, Oncale was working for respondent Sundowner Offshore Services, Inc., on a Chevron U. S. A., Inc., oil platform in the Gulf of Mexico. He was employed as a roustabout on an eight-man crew which included respondents John Lyons, Danny Pippen, and Brandon Johnson. Lyons, the crane operator, and Pippen, the driller, had supervisory authority, App. 41, 77, 43. On several occasions, Oncale was forcibly subjected to sex-related, humiliating actions against him by Lyons, Pippen, and Johnson in the presence of the rest of the crew. Pippen and Lyons also physically assaulted Oncale in a sexual manner, and Lyons threatened him with rape.

Oncale's complaints to supervisory personnel produced no remedial action; in fact, the company's Safety Compliance Clerk, Valent Hohen, told Oncale that Lyons and Pippen "picked [on] him all the time too," and called him a name suggesting homosexuality. *Id.*, at 77. Oncale eventually quit—asking that his pink slip reflect that he "voluntarily left due to sexual harassment and verbal abuse." *Id.*, at 79. When asked at his deposition why he left Sundowner, Oncale stated: "I felt that if I didn't leave my job, that I would be raped or forced to have sex." *Id.*, at 71.

Oncale filed a complaint against Sundowner in the United States District Court for the Eastern District of Louisiana, alleging that he was discriminated against in his employment because of his sex. Relying on the Fifth Circuit's decision in *Garcia* v. *Elf Atochem North America*, 28 F. 3d 446, 451–452 (1994), the District Court held that "Mr. Oncale, a male, has no cause of action under Title VII for harassment by male co-workers." App. 106. On appeal, a panel of the Fifth Circuit concluded that *Garcia* was binding Circuit precedent, and affirmed. 83 F. 3d 118 (1996). We granted certiorari. 520 U. S. 1263 (1997).

## II

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 78 Stat. 255, as amended, 42 U. S. C. § 2000e–2(a)(1). We have held that this not only covers "terms" and "conditions" in the narrow contractual sense, but "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Savings Bank, FSB* v. *Vinson,* 477 U. S. 57, 64 (1986) (citations and internal quotation marks omitted). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21 (1993) (citations and internal quotation marks omitted).

Title VII's prohibition of discrimination "because of . . . sex" protects men as well as women, *Newport News Shipbuilding & Dry Dock Co.* v. *EEOC,* 462 U. S. 669, 682 (1983), and in the related context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race. "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda* v. *Partida,* 430 U. S. 482, 499 (1977). See also *id.,* at 515–516, n. 6 (Powell, J., joined by Burger, C. J., and REHNQUIST, J., dissenting). In *Johnson* v. *Transportation Agency, Santa Clara Cty.,* 480 U. S. 616 (1987), a male employee claimed that his employer discriminated against him because of his sex when it preferred a female employee for promotion. Al-

though we ultimately rejected the claim on other grounds, we did not consider it significant that the supervisor who made that decision was also a man. See *id.*, at 624–625. If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination "because of . . . sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.

Courts have had little trouble with that principle in cases like *Johnson*, where an employee claims to have been passed over for a job or promotion. But when the issue arises in the context of a "hostile environment" sexual harassment claim, the state and federal courts have taken a bewildering variety of stances. Some, like the Fifth Circuit in this case, have held that same-sex sexual harassment claims are never cognizable under Title VII. See also, *e. g.*, *Goluszek* v. *H. P. Smith*, 697 F. Supp. 1452 (ND Ill. 1988). Other decisions say that such claims are actionable only if the plaintiff can prove that the harasser is homosexual (and thus presumably motivated by sexual desire). Compare *McWilliams* v. *Fairfax County Board of Supervisors*, 72 F. 3d 1191 (CA4 1996), with *Wrightson* v. *Pizza Hut of America*, 99 F. 3d 138 (CA4 1996). Still others suggest that workplace harassment that is sexual in content is always actionable, regardless of the harasser's sex, sexual orientation, or motivations. See *Doe* v. *Belleville*, 119 F. 3d 563 (CA7 1997).

We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discrimina-

t[ion] . . . because of . . . sex" in the "terms" or "conditions" of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

Respondents and their *amici* contend that recognizing liability for same-sex harassment will transform Title VII into a general civility code for the American workplace. But that risk is no greater for same-sex than for opposite-sex harassment, and is adequately met by careful attention to the requirements of the statute. Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *"discriminat[ion]* . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris, supra,* at 25 (GINSBURG, J., concurring).

Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer di-

rect comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *"discrimina[tion]* . . . because of . . . sex."

And there is another requirement that prevents Title VII from expanding into a general civility code: As we emphasized in *Meritor* and *Harris,* the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris,* 510 U. S., at 21, citing *Meritor,* 477 U. S., at 67. We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory "conditions of employment."

We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Harris, supra,* at 23. In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The

real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

### III

Because we conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII, the judgment of the Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, concurring.

I concur because the Court stresses that in every sexual harassment case, the plaintiff must plead and ultimately prove Title VII's statutory requirement that there be discrimination "because of . . . sex."