On Petition for Rehearing En Banc
By order filed October 2, 2006, the Court denied appellant’s petition for rehearing en bane. A poll requested by a member of the Court failed to produce a majority of judges in active service in favor of rehearing en banc. Chief Judge Wilkins and Judges Michael, Traxler, King, and Gregory voted to rehear the case en banc, and Judges Widener, Wilkinson, Niemeyer, Shedd, and Duncan voted against rehearing en banc.
Judge Niemeyer now files an opinion in support of the order denying rehearing en banc, and Judge King files an opinion, in which Chief Judge Wilkins and Judges Michael, Traxler, and Gregory join, dissenting from the denial of rehearing en banc.
Entered at the direction of Judge Niem-eyer for the Court.
*379 NIEMEYER, Circuit Judge,
opinion in support of the court’s order denying appellant’s motion for rehearing en banc:
The differences that Judge King has with the majority’s view of this case have puffed up the writings of all to such a level that they are addressing abstract arguments about the policy ramifications of Title VII’s retaliation provisions. The fact remains that this case presents a straightforward and unremarkable legal question: Did Robert Jordan state a Title VII claim against his employer for retaliation against him for complaining about a coworker’s single isolated racist remark made not to Jordan himself, but to a television set? While the single racist remark by the fellow employee was an ugly one, not even Jordan alleged that it had created a hostile work environment as defined by Title VII cases. Ruling comfortably within the bounds of the statutory language and existing precedent, the district court dismissed the claim under Federal Rule of Civil Procedure 12(b)(6), and we affirmed.
The complaint alleges that Jordan, while in the network room of his employer’s office, heard Jay Farjah, a coworker, who was watching television, exclaim — not directly to Jordan but in his presence— “They should put those two black monkeys in a cage with a bunch of black apes and let the apes f — k them.” Farjah was speaking to the television set in response to a report that John Allen Muhammad and Lee Boyd Malvo, the Washington-area terrorists, had been captured. Jordan alleged that he was offended by Farjah’s statement and reported it to two other coworkers, who told Jordan that they had heard Farjah make similar offensive remarks many times before. Jordan complained about Farjah’s remark to various supervisors, who briefly investigated it.
Jordan’s complaint alleges that during the month following his complaints about Farjah’s remark, one supervisor delayed his work shift by two and a half hours and gave him extra work assignments, and another made a derogatory remark toward him at an office Thanksgiving party. He alleged that about a month after he complained, his employer fired him because, as his employer said, he was “disruptive,” his position “had come to an end,” and, as he was told, his fellow employees and supervisors “don’t like you and you don’t like them.” He alleged that this was a “pretext” and that he was fired “because of his opposition to Farjah’s racially offensive remark.” The district court concluded that Jordan’s allegations did not state a claim for retaliation upon which relief could be granted, because Jordan was not opposing “any practice made an unlawful employment practice by” Title VII. See 42 U.S.C. § 2000e-3(a).
Jordan admitted that the single isolated racist comment that he heard did not amount to a practice that was made an unlawful employment practice under Title VII, but he did allege that Title VII might eventually be violated because “had [a fellow employee] continued, unabated, his conduct would at some time have ripened into [a] racially hostile work environment.”
In EEOC v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir.2005), we held that an employee did have a claim for retaliation if he “reasonably believes” that he was opposing a practice made an unlawful employment practice by Title VII, even if the practice had not yet ripened into a Title VII violation. But the law has never protected employees in connection with their complaints about potential or future violations that they feared might occur. To adopt now such an extension of the statutory language would trample all existing Title VII jurisprudence that recognizes a difference between an isolated racial slur, which is always and everywhere inap *380 propriate, and the sort of severe or pervasive conduct that creates a hostile work environment. “Title VII does not prohibit all verbal or physical harassment in the workplace.” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); see also id. (Title VII will not become “a general civility code for the American workplace” so long as courts pay “careful attention to the requirements of the statute”).
Jordan has argued that the reasonableness standard adopted in Navy Federal stands in tension with the early reporting policy incentives discussed in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 806, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Judge King adopted this argument as his reason for urging an extension of Title VIPs retaliation provisions to cover potential violations. As we demonstrated in some detail in our panel opinion, however, there is no such tension because Jordan is comparing the qualitative requirement of being objectively reasonable when opposing unlawful practices with the laches concept discussed in Faragher. See Jordan v. Alternative Resources Corp., 458 F.3d 332, 341-43 (4th Cir.2006). Complaining employees are protected by Title VII once they have an objectively reasonable belief that a Title VII violation has occurred. On the other hand, if they want to protect their right to sue their employers, they have a reasonable amount of time in which to bring their concern to their employer’s attention. These principles are not in tension with each other — they are simply different provisions with different conditions. Congress limited the scope of retaliation claims, and our decision in Navy Federal amply protects employees who reasonably err in understanding those limits. We have simply indicated our unwillingness to go beyond Navy Federal and use Title VTI to create a national workplace civility code.
As the law stands, Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees’ isolated racial slurs. It protects an employee who opposes “any practice made an unlawful employment practice,” 42 U.S.C. § 2000e-3(a), or who “reasonably believes” he is opposing a practice made an unlawful practice by Title VII, Navy Federal, 424 F.3d at 406.
Of course nothing in our ruling condones the contemptible comment made by the coworker in this case. We have simply held that complaining about an isolated racial slur is not opposition protected by Title VII.
On the § 1981 discrimination claim, the issue is not whether Jordan’s complaint is too spare to satisfy notice pleading, as Judge King frames the issue. Neither we nor the district court held it to be too spare. The issue is whether Jordan’s pleading states a claim upon which relief can be granted. Jordan’s detailed complaint for § 1981 discrimination is that his employer fired him because of “his opposition to [a fellow employee’s] racially offensive statement.” The district court said that this did not state a § 1981 claim for discrimination, even if Jordan alleged in a conclusory manner that it amounted to discrimination, because Jordan failed to demonstrate any basis from which to conclude that his own race “played any role in his termination.” The court observed that the only person alleged to have engaged in racist conduct was the fellow employee, and the fellow employee was “not alleged to have contributed to Jordan’s termination.” We have affirmed the district court on this same reasoning.
*381 For these reasons, this case merits no analysis further than the careful and thorough analysis already applied by both the majority and dissenting opinions.