[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2010
JOHN LEY
CLERK

No. 09-14687
Non-Argument Calendar

_____

D. C. Docket No. 07-10117-CV-KMM

CELESTE BRUNO,

                                                    Plaintiff-Appellee,

versus

MONROE COUNTY,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 16, 2010)

Before DUBINA, Chief Judge, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

Appellee Celeste Bruno filed suit against her former employer, Appellant

Monroe County, Florida, alleging a hostile work environment based on sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). At trial, a jury found that Bruno was subjected to a hostile work environment because of her sex, which was created by her immediate supervisor, County Commissioner and then acting Mayor Charles "Sonny" McCoy. In a special verdict form, the jury found that, although Bruno unreasonably failed to take advantage of the preventative measures that were provided by Monroe County, the county did not exercise reasonable care to prevent and promptly correct any sexually harassing behavior in the workplace. The jury awarded Bruno damages totaling $48,400.00.

After trial, Monroe County moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In its motion, Monroe County argued that the trial evidence was insufficient for an objectively reasonable person to find that McCoy's behavior created a sexually hostile work environment, and further argued that it had demonstrated by a preponderance of the evidence that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior in the workplace. The district court denied the county's motion and this appeal followed.

**I.**

"We review de novo the denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1177 (11th Cir. 2005). "Judgment as a matter of law is appropriate when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). "When the merits of the motion turn on the sufficiency of the evidence, we review the entire record, examining all evidence, by whomever presented, in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor." *Id.* However, we do "not assume the jury's role of weighing conflicting evidence or inferences, or of assessing the credibility of witnesses." *Id.* Thus, we will "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.* (quotation and alteration omitted). We will reverse "only if the facts and inferences point overwhelmingly in favor of the movant, such that reasonable people could not arrive at a contrary verdict." *Id.* (quotation and alteration omitted).

**II.**

3

One of Monroe County's arguments on appeal is that Bruno's subjective perception of McCoy's alleged harassment was not objectively reasonable because McCoy's conduct was not severe enough to create an environment that a reasonable person would find hostile or abusive. It contends that McCoy's stories and statements did not rise to the level of harassment, given that he did not touch Bruno, proposition her for sex or sexual favors, or condition her job performance on sexually related activity. It argues that there was no harassment that was sufficiently severe or pervasive to alter the terms and conditions of Bruno's employment and create an abusive work environment, but rather "[t]he picture painted by Bruno at trial was simply that of an elderly man who recounted stories of his life, who did not understand that Bruno did not want to hear them."

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In order to prove a hostile work environment, a plaintiff must demonstrate:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

4

discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (*en banc*). In reviewing a case involving a claim of hostile work environment, "the evidence of harassment is considered both cumulatively and in the totality of the circumstances." *Id.* "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Id.* (emphasis in original). "In evaluating allegedly discriminatory conduct, we consider its frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 808-09 (quotation omitted).

In order to prove discrimination, the plaintiff must demonstrate that "the environment was both subjectively and objectively hostile." *Id.* at 809. "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* (quotation omitted). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quotation and alteration omitted). "As the Supreme Court has observed, '[t]he real social impact of workplace behavior often depends on a constellation of

5

surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Id.* at 810 (quoting *Onscale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998)).

Applying these legal standards to the facts of this case, we conclude that the district court did not err in finding that a reasonable person could conclude, based on the evidence presented, that McCoy's conduct was sufficiently severe or pervasive to constitute a hostile work environment based on sexual harassment. The evidence at trial showed that McCoy would cycle through a series of sexually-themed stories on virtually a daily basis when he and Bruno were alone, and when Bruno asked him to stop, he would continue as if he did not hear her. Furthermore, McCoy made various comments about Bruno that would cause a reasonable person in Bruno's position to consider McCoy's behavior severe or pervasive.

After considering the totality of the circumstances, examining all of the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor, we affirm the district court's denial of Monroe County's motion for judgment as a matter of law with respect to the jury's finding that Bruno was subjected to a hostile work environment based on sexual harassment.

6

Monroe County next argues that, because it proved both elements of the *Faragher*[1] defense, the district court should have entered judgment in its favor. It contends that, because it had a comprehensive anti-harassment policy, which was effectively communicated to its employees, applied to everyone who conducted business for it, including county commissioners, clearly prohibited harassment, and included reasonable complaint procedures, it satisfied the first prong of the *Faragher* defense. Monroe County contends that, although it could not suspend, remove, or discipline a commissioner, it could remove an employee from a hostile work environment and there were other ways for a commissioner to be punished for sexual harassment, including suspension or removal by the Florida governor, action by the Florida Ethics Commission, or discipline by the Monroe County voters in the form of denying re-election. It asserts that, because its policy provided that harassment "will not be tolerated" and that "appropriate action" will be taken, it was reasonable.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807, 118

---

[1] *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

S. Ct. at 2292-93. The employer will be strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim. *Id.* at 807, 118 S.Ct. at 2293. However, when an employee has established a claim for vicarious liability where no tangible employment action was taken, "a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* at 807, 118 S.Ct. at 2293. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 807, 118 S.Ct. at 2293. "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001) (citing *Faragher*, 524 U.S. at 807, 118 S.Ct. at 2293).

The first element of the affirmative defense, which is the element at issue in this appeal, has two prongs: (1) reasonable care to prevent sexual harassment and (2) reasonable care to correct sexual harassment. *Id.* at 1313-14. "[A]n employer's showing that it has a sexual harassment policy does not automatically satisfy its burden." *Id.* at 1314. "[O]nce a company has developed and promulgated an

effective and comprehensive anti-sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to 'know what is going on' within the company." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997).

Applying these legal standards to the facts of this case, we conclude that the district court properly denied Monroe County's motion for judgment as a matter of law. A reasonable jury, upon considering all the evidence, could find that Monroe County did not prove by a preponderance of the evidence that it undertook reasonable care in preventing sexual harassment by elected commissioners, such as McCoy. Although the express terms of Monroe County's sexual harassment policy clearly made it applicable to the county's "agents," such as elected commissioners,[2] the evidence at trial showed that the policy could be considered largely ineffective as to them. The policy only mentioned that "disciplinary

---

[2]The policy "applie[d] to all employees (including Division Directors, department heads and supervisors), agents, and third-parties such as contractors, vendors, suppliers, and other visitors to County buildings or workspaces." Although this covers the gamut of possible persons who might engage in sexual harassment, Monroe County could only be held vicariously liable for McCoy's actions if he was either an agent or employee. The parties seem to believe that McCoy cannot be considered an "employee" because of his status as an elected official, but they do not dispute that Monroe County can be held vicariously liable for McCoy's actions under principles of agency law.

action" or "appropriate remedial action" would be taken against employees and third parties who have harassed another individual, completely failing to mention whether any action would be taken against the county's "agents." Although we agree with Monroe County that a sexual harassment policy need not spell out every single possible punishment for it to be an effective deterrent, here the policy completely failed to mention that McCoy would be subjected to any remedial action whatsoever.[3] Trial testimony buttressed this reading of the policy, as Monore County employees, including the then-county attorney, were highly skeptical that any remedial action could be taken against commissioners under the policy because of their statuses as elected officials, not "employees."

Furthermore, a reasonable jury could find that the policy was not "aggressively" communicated to the commissioners. The record suggested that Monroe County took a deferential stance when it came to communicating the policy to commissioners and ensuring their understanding of it. Crucially, Monroe County's human resources director testified that although all employees were *required* to attend sexual harassment training, commissioners were merely invited to attend. To the best of her knowledge, McCoy never did attend any training. In

---

[3]As Monroe County acknowledges, it could have pursued various remedial actions against commissioners, such as reporting any wrongdoing to the State Attorney, the governor, or the Florida Ethics Commission. However, none of those remedial actions were even mentioned in the policy.

addition, Monroe County required all its employees to sign annually a statement acknowledging that they had reviewed either its sexual harassment policy or a powerpoint presentation on the topic, but no evidence was adduced at trial that Monroe County ever required McCoy to sign such a statement. The record also did not reveal whether Monroe County even required McCoy to undergo training or sign a statement following a series of events that raised a question as to the propriety of McCoy's behavior well before Mrs. Bruno brought her allegations. Rather, the County seemed to be placated by McCoy's response that he could take care of himself and knew how to act.

## IV.

In sum, the district court did not err in denying Monroe County's Rule 50(b) motion for judgment as a matter of law. First, we conclude that a reasonable jury could find, based on the evidence presented at trial, that McCoy's conduct was sufficiently severe or pervasive to constitute a hostile work environment based on sexual harassment. Second, a reasonable jury could also find that Monroe County failed to take reasonable care in preventing its commissioners, such as McCoy, from engaging in sexually harassing behavior.

**AFFIRMED.**