KAREN NELSON MOORE, Circuit Judge,
dissenting.
There are genuine disputes of material fact both as to whether the harassment was based on sex and as to whether it created a hostile work environment. Accordingly, I would vacate the grant of summary judgment and remand to the district court.
Kim Graves and David Schum initially had an amicable, but professional, relationship. See R. 18 (Graves Dep. at 99-100) (Page ID # 261-62). Although they occasionally talked about their lives outside of work, Graves restricted these conversations to her work history and where she lived, as well as to limited information about her husband. Id. at 101, 118 S.Ct. 998 (Page ID # 263). In. Graves’s words, “Nothing I wouldn’t talk with any other professional about.” Id. Graves and Schum did not socialize after hours either, save for one occasion when they went to lunch with another colleague. Id. at 100, 118 S.Ct. 998 (Page ID # 262). They were not close friends who shared intimate details about each other’s lives; they were friendly colleagues whose conversations were almost always about Dayton Gastroenterolo-gy. Schum’s text messages cannot be divorced from this context.
In order to prevail on her hostile-work-environment claim, Graves must establish that Schum’s harassment was “based on sex.” See Smith v. Roek-Tenn Servs., Inc., 813 F.3d 298, 307 (6th Cir. 2016). There are a number of ways in which Graves can do this, including showing that the behavior was overtly sexual. See Williams v. Gen. Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999). “[Hjarassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women [also] satisfies the ‘based on sex’ requirement.” Id. Graves need not show that Schum was motivated by anti-female animus, however, because his text messages were overtly sexual.
Schum’s text messages not only refer to “wild sex,” but also they imagine Graves having it and express Schum’s desire to have it. R. 18 (Graves Dep. at 104, Def. Ex. K) (Page ID # 266, 364). Given the context *491 of their relationship, a reasonable jury could find that Schum was trying to engage Graves in a conversation about sex, that Schum was doing this because he wanted to pursue a relationship with Graves, and that his behavior was therefore “based on sex.” See Williams, 187 F.3d at 560. Requiring defendants to reveal their motives outright would punish only the most vulgar harassers and reward those smart enough to speak in subtleties.
That the text messages would be “inappropriate and unprofessional” whether sent to a woman or a man, as Graves acknowledged in her deposition, R. 18 (Graves Dep. at 105) (Page ID # 267), does not mean that they are “gender-neutral,” R. 26 (Op. at 10) (Page ID # 436). Comments that are inappropriate whether said to a woman or a man may cross the line into harassing behavior when said to a woman. Social context is key. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). For example, that it would be inappropriate for a white employee to make disparaging comments about another white employee’s hair does not mean that the same comments, directed at a black employee, would not constitute harassment based on race. See generally Lovelace v. BP Products N. Am., Inc., 252 Fed.Appx. 33, 36 (6th Cir. 2007). Similarly, that it would be inappropriate for a Christian employee to make comments to another Christian employee suggesting that employee dress up as Osama bin Laden for Halloween does not mean that the same comments, directed at a Muslim employee, would not constitute harassment based on religion. See generally Hussain v. Highgate Hotels, Inc., 126 Fed.Appx. 256, 260 (6th Cir. 2005). Finally, Schum’s continued harassment of Graves need not evince an anti-female animus to be “based on sex”: just as a jury could find that Schum made sexual advances toward Graves, a jury could find that Schum’s subsequent treatment of her was rooted in sexual desire and rejection.
There also is a genuine dispute of material fact as to whether the harassment created a hostile work environment. The objective component of this inquiry requires us to look at the totality of the circumstances. Williams, 187 F.3d at 562. “These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Graves alleges that after she reported Schum to their supervisor, Schum became antagonistic. R. 18 (Graves Dep. at 110-11) (Page ID # 272-73). When Graves spoke to Schum, he would either respond curtly or ignore her entirely, walking away when Graves asked him questions. Id. at 123, 118 S.Ct. 998 (Page ID # 284). Schum also gave her the most difficult assignments, including ones that required Graves work late. Id. at 134, 118 S.Ct. 998 (Page ID # 298). Schum would not give her updated schedules, however, so she often did not find out about these assignments until the last minute. Id. at 123, 128-29, 118 S.Ct. 998 (Page ID #284, 289-90). When it was Schum who had to work late, he made sure Graves stayed at the office and would not let her go home until he did. Id. at 123-24, 118 S.Ct. 998 (Page ID #284-85). According to Graves, Schum did this at least once a week. Id. at 124, 118 S.Ct. 998 (Page ID #285). Schum denied Graves her lunch breaks and refused to approve her requests for days off. Id. at 126, 132, 118 S.Ct. 998 (Page ID # 287, 293). Schum also threw a patient’s medical chart at Graves while the two were in front of the patient. Id. at 127, 118 S.Ct. 998 (Page ID #288). *492 These were not isolated incidents; Graves testified that Schum harassed her daily. Id. at 131, 118 S.Ct. 998 (Page ID # 292). Accepting these allegations as true, Schum’s behavior affected almost every facet of Graves’s life at Dayton Gastroen-terology. On this evidence, a jury could find that Schum’s harassment created a hostile work environment.
I would reverse the district court’s grant of summary judgment to the defendants and allow the case to proceed. Therefore, I respectfully dissent.