NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued August 9, 2017
Decided October 24, 2017

*Before*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1176

| | |
|---|---|
| WAYNE L. FELLERS, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 15-cv-00347 |
| MEGAN J. BRENNAN, | |
| Postmaster General of the United States, | Robert W. Gettleman, |
| *Defendant-Appellee.* | *Judge.* |

## ORDER

After spats with coworkers occurring on a single day in 2014, Wayne Fellers brought this action against the United States Postal Service, claiming he was subjected to a hostile work environment based on his race and sex. The district court entered summary judgment for the Postal Service, explaining that a reasonable jury could not find from the evidence that a hostile work environment existed or that the Postal Service had been negligent in addressing Fellers's allegations. He challenges these conclusions.

When reviewing the entry of summary judgment, we construe the evidence in the light most favorable to the opposing party. *See Liu v. Cook Cty.*, 817 F.3d 307, 309

(7th Cir. 2016). On a Saturday in February 2014, Fellers was working as a custodian at a Postal Service facility in suburban Chicago. Ron Crumbley, a supervisor, instructed Fellers and another custodian to wax the floors in two employee locker rooms. Crumbley told them to discourage coworkers from entering while they worked.

The two custodians were working in the men's locker room when a white coworker wanted to access his locker. Fellers, who also is white, told the coworker to stay out, but the coworker called Fellers a "fucking asshole" and entered the locker room. Later, a second male coworker, of Asian descent, ignored the "closed" signs Fellers had put down and walked on the new wax finish, leaving footprints and upsetting Fellers.

Fellers and the other custodian then moved to the women's locker room, again posting signs announcing that the area was closed for waxing. Nevertheless, two female employees, one black and the other Asian, asked to enter the locker room. When Fellers said no, they entered anyway. The black woman called Fellers a "dumb, stupid snowflake," "dumb, stupid white boy," and "dumb, stupid fucking asshole white boy." The other woman refrained from insulting Fellers but shocked him by changing her clothes in his presence. Meanwhile a third woman had entered, and she laughed at the insults and Fellers's discomfort.

After five minutes of being ridiculed, Fellers left the locker room and located the women's supervisor, Bernie Hudson. Hudson told Fellers to write a complaint and said he would handle the matter on Monday. Fellers also notified his own supervisor, Crumbley, who likewise instructed him to write a complaint. Fellers then returned to the women's locker room, where he was subjected to further comments. He responded by obtaining permission to leave work early.

On Monday, Fellers submitted his complaint. He later asked the two supervisors if they had taken action, and they replied, "We're taking care of it." Hudson (who submitted a declaration during this litigation) maintains that he promptly confronted the black employee but dropped the matter after she denied—truthfully, he decided— Feller's allegations. Neither Hudson nor Crumbley received any further complaints from Fellers.

Based on these events, Fellers lodged an Equal Employment Opportunity complaint with the Postal Service. After the Postal Service declined to take action,

Fellers filed this suit. He claimed he was subjected to a hostile work environment because he is a white male, in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-16(a). (He also asserted claims of age and disability discrimination but later abandoned them.)

Following discovery, the Postal Service moved for summary judgment. In granting that motion, the district judge reasoned that, even crediting Fellers's account, his black coworker's "arguably racist and/or sexist" comments "were not sufficiently severe, pervasive or offensive" to create a hostile work environment. In any event, the judge continued, the Postal Service could not be liable because coworkers, not supervisors, were the source of the harassment and Fellers lacked evidence suggesting that management had not done enough to end the harassment. Indeed, the judge added, "there is no evidence that the harassment continued after plaintiff reported it." Fellers disputes these conclusions.

We start with the judge's assessment that a jury could not reasonably find that the harassment was significant enough to constitute a hostile work environment. Title VII is violated when a "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive summary judgment, Fellers needed to provide evidence from which a jury reasonably could find "(1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)).

We agree with the district judge that a jury could not reasonably find that the comments directed at Fellers created a hostile work environment. The existence of a hostile work environment depends on factors including "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016); *see Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (noting that the "key inquiry is whether the conduct was so severe or pervasive that it altered the conditions

of the employment relationship"). Fellers was not physically threatened, nor was the offensive conduct frequent—it occurred on a single day. And although the taunts from his black coworker referred to race and sex, her deplorable remarks—if Fellers's recollection is accurate—are not meaningfully distinguishable from those in other cases where isolated epithets were legally insufficient to create a hostile work environment. *See Nichols*, 755 F.3d at 601 (concluding that coworker's use of "black n----r" was not sufficient to defeat summary judgment); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566–67 (7th Cir. 2004) (deeming insufficient an overheard utterance of "black motherfuckers" directed at others). And while Fellers was shocked that a female coworker would change clothes in his presence, he was in the women's locker room, making it implausible that she was engaging in discriminatory conduct "directed at" him.

Given our agreement with the district judge on this first point, we need not address Fellers's additional contention that Postal Service management did nothing to address the alleged harassment. Accordingly, the judgment of the district court is

AFFIRMED.