NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted July 1, 2020
Decided July 9, 2020

### Before

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

| | |
|---|---|
| Nos. 19-1721 & 19-3255 | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| KARL HARRIS, *et al.*, *Plaintiffs-Appellants*, | |
| *v.* | Nos. 14 C 1500 & 14 C 8758 |
| YRC WORLDWIDE, INC., *Defendant-Appellee*. | Susan E. Cox, *Magistrate Judge*. |

### Order

Eddie Williams, Jr.; Karl Harris; Thomas Jackson; and Derrick Rias are four of the many plaintiffs in this employment-discrimination litigation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–16. A magistrate judge, serving by consent under 28 U.S.C. §636(c), granted summary judgment to the employer, *McDade v. YRC Worldwide, Inc.*, 2017 U.S. Dist. LEXIS 147813 (N.D. Ill. Sept. 13, 2017), and these four plaintiffs appealed without waiting for the final resolution of the claims by all other plaintiffs. The oral argument of that appeal in February 2018 covered the merits, but we dismissed it for want of appellate jurisdiction. *Williams v. YRC Worldwide, Inc.*, No. 17-

3122 (7th Cir. Feb. 22, 2018). The other plaintiffs' claims were finally resolved, and these four took a second appeal (No. 19-1721). Once the district court entered a final judgment, they appealed for a third time (No. 19-3255). Because we have heard oral argument on the merits, a second argument is unnecessary, and we resolve these follow-up appeals on the briefs and record.

Appellants, all African-American, were (and three apparently still are) "combo" truck drivers for YRC—that is, workers who load the trucks, drive them, and unload them at their destinations. The gist of their claim is that suburban routes are more desirable than urban routes but that YRC, bypassing seniority rules under a collective bargaining agreement, assigned suburban routes to white drivers more frequently than it would have done if race had been ignored. Appellants do not tell us how often this occurred; the record does not contain quantitative evidence. They do not contend that route assignments affect wages or the probability of promotion. They assert generally that driving on urban streets is more likely to cause accidents that could lead to discipline, but only one of them (Rias) was disciplined after an accident. He was fired but does not contend in this suit that his discharge was discriminatory.

The magistrate judge concluded that three of the four appellants had not provided any concrete facts that would permit a trier of fact to find that urban routes are worse in any material way than suburban routes. The judge therefore concluded that they had not raised a *prima facie* claim of discrimination. Rias, by contrast, created such a claim by testifying that someone once pulled a gun on him when he was delivering an urban load. YRC then explained its assignment practices, which shifted back to Rias the burden of showing that the explanation was a pretext for discrimination. See, e.g., *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). But, the magistrate judge observed, Rias and the other appellants ignored the subject and "failed to present any argument at all on the issue of pretext." 2017 U.S. Dist. LEXIS 147813 at *24. Appellants' brief contends that this is wrong but does not cite any place where a pretext argument was made in the district court. Instead they make generic observations (Br. 37–38), such as that YRC's dispatchers assign routes. They do not explain how this shows that YRC's explanation of the criteria by which dispatchers do this is a pretext for discrimination. Appellants have not met their burden under Title VII.

Just as appellants did not try to show concretely how urban routes provided them with inferior working conditions, they did not try to analyze the assignments to see how often YRC followed seniority and how often it did not. Each appellant testified to one or more departures from the seniority rules, but unless YRC departed more often to the detriment of black workers than to the detriment of white workers, the departures were not discriminatory. Discrimination under Title VII means a difference in treatment

for a prohibited reason. Yet appellants did not present evidence about how similarly situated white workers fared in this respect.

We have our doubts about whether seniority plays any proper role in this suit. Seniority comes from a collective bargaining agreement between YRC and Teamsters Local 179. Appellants do not say that they ever complained to their union about YRC's asserted departures from seniority and do not contend that the union has engaged in racial discrimination in enforcing the agreement. Yet to protest a departure from a collective bargaining agreement a worker must exhaust the agreement's remedies and then bring a hybrid contract and duty of fair representation action jointly against the union and the employer. See, e.g., *Bennett v. Glass, Molders, Pottery & Plastics Union*, 958 F.2d 1429 (7th Cir. 1992). Local 179 is not a party and, to repeat, appellants do not accuse it of discrimination. This does not mean that they are forbidden to show that their route assignments were discriminatory, but it does disable them from contending that the assignments violated the seniority provisions of the collective bargaining agreement.

In addition to complaining about route assignments, appellants contend that they experienced a racially hostile environment. The record does not bear this out. For example, Williams testified that he never heard any offensive language directed toward black drivers, though he once heard a slur about a Hispanic driver. 2017 U.S. Dist. Lexis 147813 at *6. Harris testified that he heard bad language "all the time" but was not offended by it. *Id.* at *8. Jackson testified that he was called "homeboy" by a white driver "on a couple of occasions" but did not report this to a supervisor and did not report hearing any offensive language from supervisors. *Id.* at *11. Rias reported two slurs by white drivers against Hispanics and two against him, over the course of a years-long career. Rias is the only appellant to attribute a statement to a supervisor. He says that one once asked him "what's the deal with chicken and waffles?" *Id.* at *12–13. These statements, individually and collectively, do not amount to the sort of serious or pervasive comments that violate Title VII, as the Supreme Court understands it. See, e.g., *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998).

The magistrate judge's thorough opinion explores appellants' claims in more detail. We substantially agree with that analysis, which is consistent with what we have said above.

AFFIRMED