[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13746

Non-Argument Calendar

_____

LAURA E. ALKINS,

                                                      Plaintiff-Appellant,

*versus*

SHERIFF OF GWINNETT COUNTY,

                                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00005-WMR

_____

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Laura Alkins appeals the summary judgment in favor of the Sheriff of Gwinnett County on her retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Alkins was terminated after the Sheriff's Office investigated her report that a male supervisor kissed her without her consent. The district court determined that Alkins's report did not constitute statutorily protected activity under Title VII because she lacked a reasonable belief that the unwanted kissing amounted to sexual harassment. For the reasons that follow, we reverse the summary judgment and remand for further proceedings.

## I.

Alkins was employed as a peace officer in the Sheriff's Office for nearly two decades. In 2018, she was notified that she would be reassigned back to the County jail, where she had worked several years earlier. In a meeting with her supervisor, Major Raymond Pelis, Alkins stated that during her prior tenure at the jail, then-Lieutenant Jon Spear kissed her without her permission. Specifically, Alkins alleged that Spear called her into an empty office and, without warning, "stepped toward" her and "began kissing [her] with his mouth open." When Spear realized Alkins was not reciprocating, he stopped kissing her and left the room. Alkins was a corporal at the time. She told only her husband about the

incident—she did not report it up the chain of command. Based on the incident, Alkins—who by 2018 had been promoted to lieutenant herself—told Pelis that she feared that a transfer back to the jail would require her to work under Spear—now a captain—and potentially expose her to further unwanted contact.

An investigation into Alkins's allegation ensued. Alkins took a polygraph test and was placed on administrative leave. The investigation ultimately failed to prove or disprove her allegation. However, during the unwanted-kissing investigation, Alkins made statements about superior officers' reactions to her allegation that prompted a subsequent investigation. The second investigation concluded that Alkins had been untruthful in violation of Sheriff's Office policy, and she was demoted.

Alkins was informed of her demotion by Chief Deputy Luis Solis. During that meeting, Alkins made another allegation that prompted a third investigation. She alleged that when she initially informed Pelis about the incident with Spear, Pelis stated that he was aware of other on-the-job sexual allegations concerning Spear. A brief investigation failed to substantiate that allegation, and Solis informed Alkins that the Sheriff's Office had "lost confidence in [her] ability to effectively provide leadership." Alkins was terminated three weeks after her initial allegation against Spear.

Alkins sued the Sheriff's Office for terminating her in retaliation for engaging in activity protected by Title VII. She contended that her report to Pelis about the incident with Spear, who she characterized as a "superior officer" and "supervisor," was protected

4                    Opinion of the Court                 21-13746

activity. After discovery, the Sheriff's Office moved for summary judgment in part because Alkins failed to demonstrate a *prima facie* case of retaliation. The Sheriff's Office contended that Alkins had to demonstrate that her report was based on conduct that gave rise to an objective belief that the complained-of conduct was unlawful harassment. A magistrate judge concluded that Alkins had no reasonable basis to believe that the unwanted kiss constituted sexual harassment and recommended granting the motion. That determination was based on a four-factor test this Court uses to determine whether harassment by a supervisor is sufficiently severe or pervasive to give rise to a substantive claim. Alkins objected to the recommendation, contending that she was not required to "prov[e] or establish[] an independent claim of sexual harassment under Title VII" to survive a motion for summary judgment. The district court adopted the recommendation over Alkins's objection, and Alkins appealed.

## II.

We review an entry of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

The sole issue on appeal is whether Alkins had a reasonable belief that she suffered sexual harassment when her alleged supervisor kissed her against her wishes, such that her report concerning the incident is protected activity under Title VII. We agree with Alkins that her report was protected activity.

Under Title VII's opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The employee bears the initial burden to make a *prima facie* case by demonstrating that she engaged in statutorily protected activity; that she suffered an adverse employment action; and that there was a causal link between the protected activity and the adverse action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Once a *prima facie* case is established, the burden shifts to the employer to come forward with legitimate reasons for the employment action, and then the burden shifts back to the employee to demonstrate that the given reasons are pretextual. *Id.* at 1310-11.

The first requirement of Alkins's *prima facie* case—whether she was engaged in statutorily protected activity—is at issue here. Reporting that a supervisor engaged in a substantively unlawful employment practice is a protected activity. *See id.* at 1311. Even reporting substantively *lawful* conduct is a protected activity, "so long as [the employee] demonstrates a good faith, reasonable belief

that the employer was engaged in unlawful employment prac-tices." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (quotation omitted). To make that demonstration, a plaintiff need only allege conduct that is "close enough" to an un-lawful practice "to support an objectively reasonable belief that it is." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

We measure whether the conduct is "close enough" by look-ing to controlling substantive law, but "the plaintiff is not required to prove that the discriminatory conduct complained of was actu-ally unlawful." *Furcron*, 843 F.3d at 1311. So, for example, a plain-tiff cannot bring a retaliation claim based on a belief that conduct violates Title VII when "long-standing binding precedent hold[s]" that it does not. *Harper*, 139 F.3d at 1389. Short of that circum-stance, we have recognized that "this analysis is somewhat fact in-tensive." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).

We turn first to the question of whether Spear was Alkins's supervisor or her co-worker when the kiss occurred. The general rule is that an employer is vicariously liable "for an actionable hos-tile environment created by a supervisor with immediate (or suc-cessively higher) authority" over the harassed employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But if a plaintiff relies on the conduct of a co-worker, "the employer will be held liable only if it knew or should have known of the harassing con-duct but failed to take prompt remedial action." *Baldwin v. Blue*

21-13746                Opinion of the Court                7

*Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1302 (11th Cir. 2007). Here, no record evidence establishes the jail's formal chain of command. Without any record evidence to the contrary, we are persuaded that a reasonable jury could conclude that *Corporal* Alkins was subordinate to the higher ranked *Lieutenant* Spear. Accordingly, we conclude that there is a genuine issue of fact as to whether Spear was Alkins's supervisor at the time of the unwanted kiss.

Turning now to whether Spear's alleged conduct was "close enough" to sexual harassment to make Alkins's report a protected activity, *see Clover*, 176 F.3d at 1351, we conclude that it was. To establish a substantive Title VII claim based on sexual harassment, "a plaintiff must establish . . . that the harassment occurred because of her sex, and that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Id.* The severe-or-pervasive element requires us to consider whether the harassment was "so objectively offensive as to alter the conditions of the victim's employment." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quotation omitted). We have identified four factors that "determine[e] whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

Here, these factors do not definitively point in a single

direction. The frequency factor most clearly cuts against any suggestion that the isolated, unwanted kiss altered Alkins's employment conditions. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 585 (11th Cir. 2000) (holding that two instances of unwanted touching over several months did not support a hostile-work-environment claim because "[e]ach incident was only momentary, and neither was coupled with any verbal suggestions or advances"). But, applying the second factor, the conduct was severe; few types of physical contact are more invasive than an open-mouthed kiss. We have recognized that less severe conduct can nonetheless support a sexual harassment claim. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (concluding that unwanted massages, "standing so close to [the plaintiff] that [her supervisor's] body parts touched [the plaintiff] from behind," and "reveal[ing] the imprint of [the supervisor's] private parts" was severe conduct). Further, our precedent does not foreclose the possibility that being subjected to an isolated, unwanted kiss by a supervisor can establish a claim. *Cf. Harper*, 139 F.3d at 1389.

The third and fourth factors could go either way. For one thing, Spear physically assaulted Alkins. But, on the other hand, Alkins has not alleged that she was threatened by the kiss, aside from her suggestion that being summoned into an empty room ratcheted up the severity of the conduct. *See Johnson*, 234 F.3d at 509 (noting that the supervisor's actions were physically threatening for the same reasons they were severe). Under the fourth factor, the Sheriff's Office contends that Alkins's job performance was

not impacted by the kiss because she received promotions and commendations in the years that followed. But Alkins contends that the kiss eventually impacted her job performance when she faced the prospect of working under Spear again.

Construing the facts in Alkins's favor, we conclude that the conduct she alleged is close enough to give rise to a reasonable belief that she was sexually harassed by Spear. A reasonable person in Alkins's shoes could believe that receiving an unwanted, open-mouthed kiss from a supervisor was sexual harassment. For that reason, a jury could find that she engaged in protected activity by reporting the kiss to Pelis.

## IV.

We **REVERSE** and **REMAND** for proceedings consistent with this opinion.