# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR RECONSIDERATION EN BANC

### NO. 03-07-00728-CV

**Twigland Fashions, Ltd., Appellant**

**v.**

**Nemia Miller, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-002877, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent from the decision to deny the motion for en banc reconsideration. Because the panel's opinion in this case conflicts with this Court's prior decision in *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30 (Tex. App.—Austin 1998, pet. denied), en banc review is necessary to maintain uniformity of the Court's decisions. *See* Tex. R. App. P. 41.2(c) (en banc review should not be ordered "unless necessary to secure or maintain uniformity of the court's decisions" or in light of extraordinary circumstances).

In determining whether there was legally sufficient evidence to support the jury submission of Miller's hostile-work-environment theory, the record is to be examined for evidence supporting Miller's theory, and all evidence to the contrary must be ignored. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) ("To determine whether legally sufficient evidence supported

Dr. Elbaor's contributory negligence submission, we must examine the record for evidence supporting Dr. Elbaor's question and ignore all evidence to the contrary."). The evidence must be considered in the light most favorable to Miller, and every reasonable inference must be indulged in her favor. *See Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex. 1970). Viewing the evidence in this light, the reviewing court must then determine "whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In other words, to reverse a verdict based on legally insufficient evidence to support submission of a jury question, the reviewing court must be persuaded that reasonable minds could not differ on the matter. *See id.* (quoting William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L. Rev. 515, 522 (1991)).

This Court acknowledged in *Davis* that hostile-work-environment claims are particularly suited to disposition by jury, rather than the judgment of a reviewing court with a cold record. *See* 979 S.W.2d at 43 ("Today, while gender relations in the workplace are rapidly evolving, and views of what is appropriate behavior are diverse and shifting, a jury made up of a cross-section of our heterogeneous communities provides the appropriate institution for deciding whether borderline situations should be characterized as sexual harassment and retaliation." (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998))). In *Davis*, the complained-of actions consisted of the plaintiff's supervisor "commenting that Davis looked good in jeans, standing too close, rubbing her arms, and poking her ribs." 979 S.W.2d at 34. The supervisor had also made remarks about wanting Davis to climb a ladder "so that he could have a better view" and to

bend over so that he "would have something to look at." *Id.* Finally, there were allegations that the supervisor had twice grabbed Davis's thighs and refused to let go during "coaching" sessions in his office. *Id.* Like the present case, there was no sexual assault, no express solicitation, and only a limited number of discrete events alleged as part of the hostile work environment. But rather than tallying the number of complained-of actions and comparing that number to other cases to determine whether there was evidence of a hostile work environment, this Court stated that "[t]here is no mathematically precise test for when a work environment is hostile or abusive," and determined that, based on the incidents described above, more than a scintilla of evidence supported submission of the question. *Id.* at 42-43. This Court further acknowledged that "the jury was the appropriate body to determine whether [the supervisor's] conduct was 'bad enough' to be actionable." *Id.* at 43. I would do the same in the present case because here, as in *Davis*, there is more than a scintilla of evidence to support Miller's hostile-work-environment claim.

In fact-specific cases such as this one, where there is no "mathematically precise test" to be applied, *id.* at 42, we must be mindful of the jury's role as arbiter of the weight and credibility of the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) ("[T]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony."); *see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000) (stating that whether harassment is sufficiently severe or pervasive to constitute hostile work environment is "quintessentially a question of fact" for jury (quoting *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994))). In addition, our review of the sufficiency of the evidence must be measured

against the language of the jury charge where, as here, there was no objection to the charge. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). The instruction and definition to the jury stated:

> Did HENRY ALONZO engage in sexual harassment of NEMIA MILLER by conduct of a sexual nature that was unwelcome and undesirable or offensive to her and that altered a term, condition or privilege of employment?
>
> > Harassment alters a term, condition, or privilege of employment when a reasonable person would find that the harassment created an abusive working environment. In determining whether an abusive work environment existed, consider the following: the frequency of the conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

It was within the province of the jury to apply this reasonable-person standard to determine whether Alonzo's conduct altered a term, condition, or privilege of Miller's employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (applying reasonable-person standard to determine whether work environment is sufficiently abusive to warrant protection under Title VII).

The panel concludes that there is no evidence that Miller was subjected to a hostile work environment and that reasonable minds could not differ on the matter, despite the fact that Miller testified to numerous incidents of inappropriate touching, including two unwanted hugs from behind in which "all of [Alonzo's] body" came into contact with hers, as well as a number of sexually charged comments and questions that caused her to feel "humiliated" and "completely appalled." In addition, it is not insignificant that these incidents involved Miller's direct supervisor, as this Court noted in *Davis* that "a supervisor's power and authority invests his or her harassing

4

conduct with a particular threatening character." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998)).

The panel cites a number of federal opinions from various jurisdictions in which the reviewing court found that there was no evidence of a hostile work environment in the face of more extreme allegations, essentially holding that in order to even submit the question to the jury, a plaintiff in a hostile-work-environment case must present a fact pattern that surpasses some unidentified threshold created by a collage of federal cases. Rather than comparing "a simple recitation of the words used or the physical acts performed" in this case to other, factually distinguishable cases and creating what would appear to be a bright-line rule, I would hold that based on the "constellation of surrounding circumstances, expectations, and relationships" present in *this* case, Miller has presented more than a scintilla of evidence of a hostile work environment. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). Thus, she was entitled to allow the jury to determine, as it did, that such an environment existed.

In addition, the panel cites Miller's ability to successfully manage her store during the period of harassment in support of its conclusion that she has presented no evidence of a hostile work environment. It is true that the Supreme Court has held, and the jury here was instructed, that one of the factors to be considered in determining whether a work environment is hostile or abusive is "whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). However, no single factor described in *Harris* is required to establish a hostile work environment. *Id.* As Justice Scalia pointed out, "the test is not whether work has been impaired, but whether working conditions have been discriminatorily

5

altered." *Id.* at 25 (Scalia, J., concurring). Furthermore, in light of Miller's testimony that Alonzo's presence caused her anxiety and distracted her from her work, the evidence, viewed in the light most favorable to Miller as required by the standard of review, suggests that the work environment *did* interfere with her performance. It would not be unreasonable to assume that in the absence of the harassing atmosphere, Miller's performance in the workplace might have been better than it was.[1] At any rate, it cannot be the law of this State that a victim of sexual harassment must justify his or her professional competency in court in order to establish legally sufficient evidence of a hostile work environment.

Because the panel's decision represents a significant departure from this Court's prior hostile-work-environment jurisprudence, *see Davis*, 979 S.W.2d at 42-43, I respectfully dissent from the denial of en banc reconsideration.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Patterson, Puryear, Pemberton and Henson;
    Joined by Justice Patterson

Filed:   October 22, 2010

_____

[1] The opinion points out that Miller outperformed other store managers under Alonzo's supervision, but given the evidence presented to the jury in connection with Twigland's failure to respond to the numerous complaints from its other female employees about Alonzo's harassing treatment, it would not be unreasonable to assume that the store managers Miller was outperforming were dealing with similar harassment of either themselves or their employees.