NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2880
_____

EDWARD SPANGLER; DONNA JACONI,

Appellants

v.

CITY OF PHILADELPHIA; DANIEL CASTRO; JACK FEINMAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cv-03434)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
April 19, 2013

Before:  AMBRO, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: April 22, 2013)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Edward Spangler and Donna Jaconi appeal the District Court's summary judgment

dismissing their employment discrimination and retaliation claims.  We will affirm.

1

I

Because we write for the parties, who are well acquainted with the case, we recite only the facts and procedural history essential to its disposition. The facts that follow are taken in the light most favorable to Spangler and Jaconi. *See Funk v. CIGNA Group Ins.*, 648 F.3d 182, 190 (3d Cir. 2011).

A

Donna Jaconi is a white[1] female currently employed by the Crime Scene Unit (CSU) of the Philadelphia Police Department (PPD). In August 2005, Jaconi witnessed PPD Captain Daniel Castro's young daughter run into a Rite Aid pharmacy screaming for help. An enraged Castro entered the store behind his daughter. Jaconi attempted to calm Castro down, but Castro pushed by her and attempted to grab his daughter by the hair. When other police officers arrived, Jaconi gave a statement to those officers.

In October 2005, PPD Lieutenant Jack Feinman informed Jaconi that Castro was becoming the CSU's new commanding officer and asked if she wanted to transfer to a different unit. Jaconi indicated that she would like to stay in the CSU and that she had a cordial relationship with Castro.

---

[1] On appeal, Appellants repeatedly assert that Jaconi is black. This assertion is belied by Appellants' own complaint, which states that Jaconi is white.

In January 2006, Castro ordered Jaconi to move some office furniture and boxes. Two months later, Castro ordered Jaconi and a male civilian to move a heavy conference table. Jaconi dropped the table, injuring herself.

In February 2006, Castro instructed Lieutenant Edward Spangler to ask the CSU night shift officers to attend three days of training without overtime pay. Jaconi asked a Fraternal Order of Police (FOP) representative whether Castro's request was consistent with the PPD collective bargaining agreement. An FOP representative called Castro regarding the issue, and Castro referred to Jaconi as a "troublemaker."

In March 2006, Castro ordered Jaconi's supervisor to dock her two hours of vacation time after a lieutenant mistakenly said Jaconi left her shift ten minutes early when in fact she was returning from court duty. After the mistake was resolved, Jaconi was credited the two vacation hours.

In October 2006, Jaconi called her supervisor to take a vacation day. Because the supervisor was not available, Jaconi notified another officer but failed to call anyone up the chain of command as required by internal policy. Jaconi was reprimanded by Castro for failing to follow internal policy.

In November 2006, Jaconi requested time off for Thanksgiving. Spangler denied Jaconi's request on the grounds that it would leave the CSU with insufficient manpower. (*Id.*) According to Jaconi, Castro suddenly increased the CSU manpower requirements.

3

In March 2007, Spangler submitted to Castro an annual evaluation of his direct subordinate, Sergeant Patricia Baker, in which he stated that Baker's performance was satisfactory. Castro disagreed with Spangler's report and instructed Spangler to indicate that Baker's performance was unsatisfactory because Baker had failed to submit reports in a timely fashion. Spangler told Castro that everyone misses reports "at one time or another" and that Castro could not "pick on one person and say she missed them, if we don't document everybody else that's missed them also." Castro replied, "I don't care. I want it changed." Despite Castro's order, Spangler did not modify Baker's evaluation and signed an unmodified evaluation in the presence of an FOP representative.

On May 7, 2007, Jaconi was at a function with police officers in another squad and some of the officers refused to talk to Jaconi. Jaconi alleges that this snub occurred because Castro told the officers that Jaconi was responsible for an undocumented internal affairs investigation.

On May 25, 2007, Jaconi removed CSU crime scene displays for use in a classroom presentation without permission from either Spangler or Castro. Spangler told Castro that he was unaware of Jaconi's actions even though officers generally ask him for permission before using those materials. Castro told Spangler that he did not trust Jaconi, that he did not want Jaconi to take the displays, and that Jaconi was a "bitch." He then ordered Spangler to direct Jaconi to return the displays. In response, Spangler stated that

4

"[g]uys do it all the time. We have guys that take the stuff out all the time out of the unit and do presentations." Castro replied, "I don't care. I don't want her doing it." Jaconi was not disciplined for removing the displays without permission.

The next day, Castro ordered Spangler to check whether Jaconi was in court as scheduled because he did not trust Jaconi. Spangler responded that he would not single out Jaconi, but would rather check on everyone. Castro replied that he did not care what Spangler did as long as he checked on Jaconi. Spangler determined that Jaconi was not in court; however, Jaconi was not disciplined for this incident.

In August 2007, Spangler received a five-day suspension and was transferred out of the CSU for inviting a female intern to a "naked swim party." In September 2008, Spangler stopped working for the PPD and became the chief of police for Drexel University.

## B

In September 2010, Spangler and Jaconi sued Castro, Feinman, and the City of Philadelphia in the U.S. District Court for the Eastern District of Pennsylvania. Jaconi asserted claims for sex and race discrimination in violation of Title VII of the Civil Rights

Act of 1964 and the Pennsylvania Human Relations Act (PHRA),[2] and retaliation in violation of the same. Spangler asserted only a retaliation claim. The District Court stayed the case until February 2011 because Castro was a defendant in an unrelated pending criminal action. Castro, Feinman, and the City were initially represented by the same attorney, but that counsel ceased representing Castro when he failed to respond to counsel's numerous attempts to contact him.

In October 2011, Feinman and the City moved for summary judgment against Spangler and Jaconi on all claims. On May 21, 2012, the District Court granted the motion, finding that Plaintiffs failed to establish prima facie cases of either employment discrimination or retaliation. The District Court also informed Plaintiffs that it was considering granting summary judgment *sua sponte* in favor of Castro and gave them until June 4, 2012, to respond. When Plaintiffs failed to do so, the District Court granted summary judgment in favor of Castro on June 5, 2012. Spangler and Jaconi have appealed both orders granting summary judgment.

---

[2] The District Court analyzed the Title VII and PHRA claims under the same standard, and we will do the same. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 318 (3d Cir. 2008).

We review de novo the District Court's summary judgments. *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 263 (3d Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must show that there is more than merely "a scintilla of evidence" supporting his position, *id.* at 252, or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A[4]

To establish a prima facie case of employment discrimination, Jaconi must show not only that she was a member of a protected class and that she was qualified for her position, but that she was subject to an adverse employment action under circumstances that raise an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789,

---

[3] The District Court exercised subject matter jurisdiction over the Title VII claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367(a). We have jurisdiction over the appeal under 28 U.S.C. § 1291.

[4] Appellants' brief cites numerous deposition transcripts that are not part of the record. We do not consider on appeal materials outside the record. *See Fassett v. Delta Kappa Epsilon*

797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Jaconi argues that several different incidents satisfy her prima facie case. The District Court disagreed, finding that the incidents either were not adverse employment actions or did not raise an inference of discrimination. We agree with the District Court.

First, Jaconi argues that Castro discriminated against her by influencing Spangler to deny her time off requests. In support of her argument, she points to Spangler's deposition testimony that Castro was targeting people on the basis of "gender and race" because "both the people he was going after were female and one was African American." App. 254a. However, this testimony was unsupported by any evidence other than Spangler's own speculation. Jaconi herself testified that Castro began denying her vacation requests because that was "his way of starting to get kind of back at me. . . . Because then there was some rumors about him not having his gun, he had a protection order against him." App. 91a. This testimony suggests that any animus Castro had against Jaconi was because of Jaconi's involvement in the altercation between Castro and his daughter rather than Jaconi's sex. Thus, this incident does not raise an inference of discrimination.

Second, Jaconi points to the March 27, 2007, incident, in which Castro ordered her

---

*(N.Y.)*, 807 F.2d 1150, 1165 (3d Cir. 1986).

and a male civilian to move a table, resulting in injury to Jaconi. Jaconi argues that Castro's order was discriminatory because "no other female officers were required to do so and males were available." Appellants Br. 3. Fatally to Jaconi's argument, however, Castro's order evidences that he treated Jaconi *similarly* to male employees, which is the antithesis of sex discrimination.

Third, Jaconi argues that Castro requested that she take training without overtime pay because she was female. But Jaconi's own amended complaint stated that she "would have been the only female to not receive overtime for the training sessions." App. 70a. Thus, as the District Court rightly noted, Castro's request was not targeted against women, but at most against Jaconi personally.

Fourth, Jaconi argues that Castro discriminated against her by penalizing her two hours of vacation time because a lieutenant mistakenly reported that Jaconi signed off ten minutes early. This incident does not constitute an adverse employment action because Jaconi was credited her vacation time when the mistake was discovered. In her own deposition, Jaconi testified that this incident "was a nonissue." App. 117a.

Fifth, Jaconi argues that Castro discriminated against her by disciplining her for failing to notify him of her request for vacation, as required by PPD policy. We agree with the District Court that this incident did not raise an inference of discrimination because there was no evidence aside from Jaconi's bare allegations that Castro treated

male officers differently.

Finally, Jaconi argues that Castro discriminated against her by calling her a "bitch." Despite the reprehensible nature of this language, insults in the workplace do not constitute discrimination "merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Accordingly, the District Court did not err in finding that Jaconi had failed to establish a prima facie case of discrimination.

B

We also agree with the District Court that Jaconi failed to establish a prima facie case of retaliation because she failed to show that she engaged in activity protected by Title VII. Activities protected by Title VII are participation in certain Title VII proceedings and opposition to discrimination made unlawful by Title VII. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). For an activity to be protected, the employee must hold an objectively reasonable and good faith belief that the activity they oppose is unlawful under Title VII. *Id.*

The only argument Jaconi makes to support her retaliation claim is that Castro caused her coworkers to ostracize her by telling them that she was involved in an internal affairs investigation against Castro. However, there is no evidence that this internal affairs investigation was related to unlawful discrimination—in fact, there is no evidence

apart from Jaconi's testimony that this investigation even happened. Jaconi's own testimony suggests that the investigation was not related to discrimination. When asked about the details of the investigation, Jaconi testified: "I don't know what the outcome of the investigation was. I think he had to pay for the radio or whatever." App. 142. Therefore, Jaconi did not engage in any protected activity and cannot make out a prima facie claim of retaliation.

## C

Like Jaconi, Spangler cannot show a prima facie case of retaliation because he did not engage in any protected activity. Spangler never complained about discriminatory treatment in any of the incidents he points to.

First, Spangler notes his refusal to change Baker's performance evaluation. However, Spangler has provided no evidence that he complained to Castro about unlawful discrimination. In fact, Spangler testified that he believed Castro's requests were the result of his "personal animosity against Sergeant Baker." App. 196a.

Second, Spangler points to an incident in which he disagreed with Castro's refusal to give Jaconi permission to use crime scene displays for a school presentation. Spangler told Castro that "[g]uys do it all the time. We have guys that take the stuff out all the time out of the unit and do presentations." App. 259a. As the District Court found, there is no context indicating that Spangler was using "guys" to refer only to males. Furthermore,

11

Spangler testified that he did not think Castro's order was "unlawful," just that it was "[i]llegitimate."

Third, Spangler points to his refusal to check on whether Jaconi was in court without checking on any other officers. However, he has provided no evidence that his refusal was a complaint about unlawful discrimination, rather than about Castro's personal dislike of Jaconi.

Finally, Spangler contends that he participated in an August 2007 investigation regarding unlawful discrimination. The District Court found no evidence in the record that Spangler actually participated in such an investigation, and Spangler has pointed us to none. Therefore, Spangler has not established a prima facie case of retaliation.

## III

For the foregoing reasons, we will affirm the judgments of the District Court.[5]

---

[5] The District Court dismissed Appellants' claims against Feinman and the City because it found no evidence that Feinman was engaged in unlawful discrimination or that the City had a policy or custom of unlawful discrimination. Appellants do not contest these findings on appeal.