[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11184

Non-Argument Calendar

_____

PATRICK DABNEY,

Plaintiff-Appellant,

*versus*

SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00336-CAP

_____

Before JORDAN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Patrick Dabney appeals from the district court's grant of summary judgment for the Department of Homeland Security ("DHS") on his claims of hostile work environment and race and color discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Dabney maintains that DHS violated Title VII by not selecting him for two promotion positions and by subsequently investigating anonymous workplace sexual harassment allegations against him, which resulted in a cease-and-desist order and a letter of reprimand. For the reasons discussed below, we affirm the district court's judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

Dabney is an African American, Black male. Dabney began working at the Atlanta Field Office of the Transportation Security Administration ("TSA"), a component of DHS, in 2002. Dabney was promoted to Supervisory Federal Air Marshal ("SFAM") in 2008.

Approximately fifteen to eighteen months after being promoted to SFAM, Dabney was selected to serve as an Administrative SFAM. In that role, Dabney rotated with other SFAMs to serve as the Acting Assistant Supervisory Air Marshal in Charge ("ASAC"). The ASAC is second-in-command to the Supervisory Air Marshal in Charge ("SAC"). At all material times, the SAC of the Atlanta

Field Office, and Dabney' direct supervisor, was Arnold Cole. Like Dabney, Cole is an African American (Black) male.

In 2016, Dabney formally applied for two ASAC positions— one at the Atlanta Field Office, and one at the Miami Field Office. This application process was overseen by the Promotion Panel, which comprised of four voting members—two of whom are African American—and two non-voting members. Dabney was deemed qualified and placed on a referral list, along with other candidates. And Cole had recommended Dabney to the Panel as his top choice for the Atlanta Field Office ASAC position. Meanwhile, the SAC of the Miami Field Office, Maria Perez, had ranked Dabney as her fifth choice for the Miami position.

After considering these recommendations, along with each candidate's level of experience, the Promotion Panel ultimately did not select Dabney for either ASAC position. Instead, the Promotion Panel voted unanimously to select Cole's second choice for the Atlanta position and Perez' first choice for the Miami position. Both selected individuals are Caucasian (White) males. These selections were announced on February 17, 2017.

Subsequently, on March 29, 2017, the TSA received an anonymous letter signed by "Atlanta Field Office employees." The letter is dated March 13, 2017, and alleges that Dabney "uses his position to harass and intimidate women at every level of the [Atlanta] Field Office" and "has blackmailed, sexually harassed and even retaliated for not submitting to his advances." The letter goes so far as to say that "[e]very female in [the Atlanta Field Office] has been

personally affected by, and/or witnessed [Dabney's] aggressive sexual harassment and abusive office demeanor" and that Dabney was "the catalyst for every female in [the] office's separation or transfer in the past five years." The letter further alleges that Dabney is "favored and shielded by SAC Cole," and that complaints to senior management have resulted only in "sentiments of retaliation." The letter concludes with a request that the TSA "look into these allegations and finally take steps to protect the women of the Atlanta Field Office."

Upon receiving this anonymous letter, the TSA referred the matter to its Office of Inspections ("OOI") for an investigation and sent Dabney a cease-and-desist order notifying him of the allegations and directing him to refrain from any misconduct and from discussing the matter with anyone other than his supervisors. These steps were recommended by Kevin Hulse, the TSA's Sexual Harassment Prevention Coordinator and an African American. Dabney received the cease-and-desist order on April 6, 2017.

The next day, Dabney contacted a TSA Equal Employment Opportunity ("EEO") counselor regarding his non-selection for the two ASAC positions and the cease-and-desist order. Then, on June 28, 2017, Dabney filed a formal EEO complaint of discrimination. The EEO complaint alleges that Dabney was discriminated against on the bases of race, color, and sex.

Meanwhile, between April 18, 2017, and July 3, 2017, OOI conducted its investigation into the conduct of Dabney and Cole based on the allegations in the anonymous letter. This three-

month process included interviewing around sixty former and current employees at the Atlanta Field Office. OOI ultimately forwarded its Report of Investigation to the TSA's Office of Professional Responsibility ("OPR"), which subsequently sent Dabney a Letter of Reprimand ("LOR") dated March 16, 2018.

The LOR outlines the findings of the OOI investigation and concludes that Dabney's conduct violated office policy and was "unbecoming a supervisor." The LOR also explains that it will be kept in Dabney's personnel file for up to two years—during which it may be cited as a prior formal disciplinary action—and then may be retained by the TSA as proof of notice or to rebut a claim of no prior misconduct. Dabney denies the allegations against him and contends that the OOI investigation and LOR detrimentally affected his reputation and career advancement.

On January 23, 2020, Dabney filed suit in the Northern District of Georgia, bringing three claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* The complaint alleges that DHS (1) created a hostile work environment based on race, color, sex, and protected activity (Count I); (2) discriminated against Dabney on the basis of race, color, and sex when it did not promote him, sent him a cease-and-desist order, and

investigated him for sexual harassment (Count II); and (3) retaliated against Dabney for engaging in protected speech.[1]

On April 30, 2021, DHS moved for summary judgment on all of Dabney's claims. After full briefing, the magistrate judge recommended that DHS's motion be granted in full. As to Count I (hostile work environment), the magistrate judge concluded that there was not sufficient evidence of any "severe or pervasive" harassment by DHS or its agents. As to Count II (discrimination), the magistrate judge determined that Dabney had established a prima facie case of race discrimination only for the ASAC selection decisions, but that DHS overcame Dabney's showing with sufficient evidence of legitimate, non-discriminatory reasons for its decisions.[2] Lastly, as to Count III (retaliation), the magistrate judge

---

[1] We note that Dabney's complaint is a textbook example of the most common type of "shotgun pleading" because it "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

[2] The magistrate judge considered the claims based on Dabney's sex (part of Counts I and II) to be abandoned, given that Dabney did not defend or otherwise address those claims in his response to DHS's motion for summary judgment. Dabney did not object to this determination, and the district court subsequently adopted it. Nor does Dabney present any arguments relating to his sex on appeal. Thus, as recognized below, any claims based on Dabney' sex have been abandoned. *See United States v. Campbell*, 26 F.4th 860, 871–75 (11th Cir. 2022) (en banc).

concluded that Dabney had failed to make a prima facie showing of any retaliatory conduct.

On November 22, 2021, Dabney filed his objections to the magistrate judge's report and recommendation. In that filing, Dabney insisted that (1) the OOI investigation constituted an adverse employment action, retaliation, and severe and pervasive harassment; (2) the LOR constituted an adverse employment action; and (3) the record presents genuine issues of material fact regarding the propriety of DHS's ASAC selection decisions.

On February 7, 2022, the district court adopted the magistrate judge's report and recommendation. In doing so, the district court addressed and overruled each of Dabney's objections. The next day, judgment was entered in favor of DHS. Dabney timely appealed.[3]

## II.    STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019). Summary judgment is proper when the evidence, viewed in a light most favorable to the non-moving party, "presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.* (quoting *Caldwell v. Warden*, 748 F.3d 1090, 1098 (11th Cir. 2014)). An issue of material fact is

---

[3] Dabney filed the Opening Brief on June 17, 2022, and DHS filed the Appellee's Brief on September 19, 2022. Dabney never filed a Reply Brief.

genuine if it has "a real basis in the record" and "the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)

## III.    ANALYSIS

On appeal, Dabney contends that the record presents genuine issues of material fact related to his hostile work environment and discrimination claims (Counts I and II).[4]  We address these claims in turn.

### A.    Hostile Work Environment

The district court did not err in granting summary judgment to DHS on Dabney's hostile work environment claim because Dabney failed to show that the alleged harassment was based on a protected characteristic and that the alleged harassment was severe or pervasive.

To prevail on a substantive hostile work environment claim,[5] a plaintiff must show that (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the

---

[4] Dabney does not address the retaliation claim (Count III) on appeal.  Dabney therefore abandoned any challenges to the district court's ruling on that claim. *See Campbell*, 26 F.4th at 871–75.

[5] A more lenient standard applies to "retaliatory" hostile work environment claims, *see Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021), but this case does not involve such a claim.

harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) his employer is responsible for such environment under a theory of either vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The fourth element—i.e., whether the harassment was sufficiently severe or pervasive—contains both a subjective component and an objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). In other words, the plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and that perception must be objectively reasonable, factoring in "all the circumstances." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). The objective component thus requires consideration of, among other things, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the [plaintiff's] job performance." *Id.*

In this case, no reasonable jury could find that the OOI investigation, the cease-and-desist order, or the LOR was based on a protected characteristic. It is undisputed that the investigation was launched in response to the anonymous allegations of harassment by Dabney, and that the cease-and-desist order and the LOR were based on that investigation. Dabney, however, insists that the investigation was racially motivated because only he and Cole—two African American males—were investigated, even though the

anonymous letter also implicated other employees (e.g., the Ombudsman).[6] But the anonymous letter specifically accuses Dabney of demonstrating a "repeated pattern of hostility towards women under his chain of command" and Cole of "shield[ing]" Dabney's conduct; it does not specifically identify wrongdoing by any other employee. Aside from this unavailing argument, Dabney has made no showing that the investigation, the cease-and-desist order, or the LOR was racially motivated. We thus conclude that Dabney cannot establish the third essential element for his hostile work environment claim.

Similarly, no reasonable jury could find that the OOI investigation, the cease-and-desist order, or the LOR constituted severe or pervasive harassment. As to the investigation, Dabney insists that DHS's conduct was severe because it damaged his reputation, particularly with female coworkers, and caused him to be treated "like a pariah." But Dabney has failed to produce evidence showing that the investigation was needlessly publicized, lengthy, or invasive, or that the investigators acted inappropriately. As to the cease-and-desist order, Dabney highlights the order's restriction on his ability to discuss the allegations with subordinates but has failed to show why that restriction is severe. Lastly, as to the LOR, Dabney contends that DHS's conduct was severe because it "negatively

---

[6] The anonymous letter alleges that "nothing ever happen[ed]" when complaints about Dabney's conduct were made to the Ombudsman and OOI, and that senior management responded with "sentiments of retaliation." The Ombudsman and the leadership of OOI are not African American.

impacted his potential for promotion." But, as the district court highlighted, "[t]here is no evidence that [Dabney] applied for any jobs following the investigation or that he was not hired because of the [LOR]." As such, the record does not support the notion that DHS's conduct was severe or pervasive, and we thus conclude that Dabney cannot establish the fourth essential element for his hostile work environment claim.

## B.    Discrimination

The district court did not err in granting summary judgment to DHS on Dabney's discrimination claim because Dabney failed to show that the OOI investigation, the cease-and-desist order, the LOR, or his non-selection for an ASAC position constituted an adverse action motivated by race or color discrimination.

Under Title VII's federal-sector provision, "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).[7] Personnel actions include most employment-related decisions, such as appointments, promotions, work assignments, compensation, and performance reviews. *Babb v. Wilkie*, 140 S. Ct. 1168, 1172–73 (2020).

In this case, Dabney has failed to produce sufficient evidence that race or color discrimination played any role in any of the

---

[7] It is undisputed that Dabney is covered by Title VII's federal-sector provision as an employee of the TSA.

challenged decisions.  With respect to the OOI investigation, the cease-and-desist order, and the LOR, as discussed above, the record establishes that each of those decisions was part of DHS's response to the anonymous allegations of sexual harassment by Dabney, and Dabney has not made an adequate showing that discrimination played any role in that response.  *See supra-Part III*(A).  Dabney likewise has failed to make any such showing with respect to DHS's decision not to select him for an ASAC position.  Rather, the record establishes that both of the selected individuals were highly qualified and, unlike Dabney, had experience working in multiple offices, which the Promotion Panel highly valued.  The record further establishes that two of the voting members of the Promotion Panel were African American and that the Panel's selection decisions were unanimous.  Against this backdrop, Dabney's conclusory allegations of discrimination do not establish a genuine issue of material fact.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment for DHS.

**AFFIRMED.**